UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  v.<br><br>GUADALUPE GALAVIZ,<br><br>  Defendant. | Criminal No. 12-cr-125-19 (CKK) |

**MEMORANDUM OPINION**
(April 26, 2016)

Presently before the Court is Defendant Guadalupe Galaviz's [288] Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c), which the Government opposes.[1] Galaviz requests that the Court modify or reduce his sentence based on § 3582(c) and Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G."), which retroactively reduced by two levels the offense levels assigned to certain drug offenses. On September 15, 2015, this Court issued a Memorandum Opinion finding that Galaviz was eligible for a reduction in sentence based on Amendment 782 and that the Court has the discretion to reduce Galaviz's term of imprisonment from 180 months to a term of not less than 168 months. As such, the Court held Galaviz's motion in abeyance in order for each party to file a memorandum in aid of sentencing setting forth its position as to whether the Court should exercise its discretion to reduce Galaviz's sentence and the reasons in support thereof. The Court has now received and reviewed both the Government's [332] Second Memorandum in Aid of Sentencing and Galaviz's [333]

---

[1] Galaviz filed two identical Motions for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c), on the same day. The Court ordered the Government to respond to the motion assigned ECF No. [288] and shall issue its ruling based on that filing. The Court shall order that the motion assigned ECF No. [289] be stricken as duplicative.

Memorandum in Aid of Sentencing.  Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court has determined that it shall not exercise its discretion to reduce Galaviz's sentence and shall DENY Galaviz's [288] Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) for the reasons described herein.

## I. BACKGROUND

Galaviz was charged by indictment with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 28 grams or more of cocaine base in violation of 21 U.S.C. § 846. Indictment, ECF No. [25].  On November 6, 2013, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Galaviz pled guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A)(i), and one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine powder in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B)(ii). *See* Plea Agmt., ECF No. [229].  Pursuant to the terms of the plea agreement, the parties agreed that the appropriate sentence of imprisonment should be 15 years (180 months). *Id.* at 2.  After conducting a plea hearing, the Court accepted the plea agreement and, on February 6, 2014, this Court sentenced Galaviz to a term of 180 months imprisonment on both counts to run concurrently, with credit for time served.  Judgment, ECF No. [268].  Galaviz did not appeal his sentence and conviction, and currently is serving the term of imprisonment.

---

[2] Def.'s Mot. for Mod. or Red. of Sentence ("Def.'s Mot."), ECF No. [288]; Mem. from U.S. Probation Office ("Prob. Mem."), ECF No. [302]; Def.'s Reply in Opp'n to Mem. ("Def.'s Opp'n to Prob. Mem."), ECF No. [303]; Govt.'s Opp'n to Mot. for Mod. or Red. of Sentence ("Govt.'s Opp'n"), ECF No. [310]; Def.'s Resp. to Govt.'s Opp'n to Def.'s Mot. to Mod. or Red. of Sentence ("Def.'s Resp. to Govt.'s Opp'n"), ECF No. [329]; Govt.'s 2d Mem. in Aid of Sentencing ("Govt.'s Mem."), ECF No. [332]; Def.'s Mem. in Aid of Sent'g Pursuant to Court's Mem. Op. ("Def.'s Mem."), ECF No. [333].

In 2014, the United States Sentencing Commission issued Amendment 782, which retroactively reduced the offense level for certain drug trafficking offenses. *See* U.S.S.G. app. C, amend. 782 (2014). In light of Amendment 782, Galaviz filed a Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) which is presently before the Court. Following the procedures set forth in this jurisdiction, the instant motion was referred to the United States Probation Office for a recalculation of Galaviz's offense level and criminal history category based on the Amendment. In response to that referral, the Probation Office filed a Memorandum providing the Court with revised guideline calculations. Specifically, the U.S. Probation Office explained that Galaviz was treated as an offender with a total offense level of 37 and a criminal history category of I at the time of his original sentencing. As such, the imprisonment range under the guidelines was 210 to 262 months. Applying the two-level reduction based on Amendment 782, the U.S. Probation Office found that Galaviz could now be treated as an offender with a total offense level of 35 and a criminal history of category of I. The imprisonment range under the revised guidelines is 168 to 210 months, a difference of 42 to 52 months from the original calculations. For the reasons described more fully in its Memorandum Opinion of September 15, 2015, which the Court incorporates herein, the Court accepted the U.S. Probation Office's calculations as accurate over objection from Galaviz. *See generally* Mem. Op. (Sept. 15, 2015), ECF No. [331]. As such, the remaining issue before the Court is whether it should exercise its discretion to reduce Galaviz's 180-month term of imprisonment under his original sentence to a term of not less than 168 months based on the revised guidelines range. Each party has submitted a memorandum in aid of sentencing setting forth its position as to this issue.

## II. DISCUSSION

Generally, a federal court "may not modify a term of imprisonment once it has been

imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010).

However, section 3582(c) of Title 18 of the United States Code provides three exceptions to this

general rule. Specifically, the Court is authorized to modify a term of imprisonment once imposed

only under one of these circumstances: (1) upon motion by the Director of the Bureau of Prisons;

(2) when expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) where

the applicable sentencing guideline range has been retroactively lowered by the Sentencing

Commission. 18 U.S.C. § 3582(c)(1)-(2). Only the third scenario is at issue in this case, 18 U.S.C.

§ 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment
> based on a sentencing range that has subsequently been lowered by the Sentencing
> Commission . . . the court may reduce the term of imprisonment, after considering
> the factors set forth in section 3553(a) to the extent that they are applicable, if such
> a reduction is consistent with applicable policy statements issued by the Sentencing
> Commission.

The relevant policy statement is section 1B1.10 of the sentencing guidelines, which

provides that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. §

3582(c)(2) and this policy statement to a term that is less than the minimum of the amended

guideline range . . . ." U.S.S.G. § 1B1.10(b)(2)(A). While section 1B1.10 provides limited

exceptions to this general rule, neither party has set forth a basis for these exceptions to be applied

in the instant action. *See id.* at § 1B1.10(b)(2)(B) (The Court may reduce a defendant's sentence

below the amended range "[i]f the term of imprisonment imposed was less than the term of

imprisonment provided by the guideline range applicable to the defendant at the time of sentencing

*pursuant to a government motion to reflect the defendant's substantial assistance to authorities*.")

(emphasis added); *Dillon*, 560 U.S. at 822 ("Except in limited circumstances, however, §

1B1.10(b)(2)(A) forecloses a court acting under § 3582(c)(2) from reducing a sentence to 'a term

that is less than the minimum of the amended guideline range.'").

Here, the Court has the discretion to implement the requested sentence reduction, but is not required to do so. *See Freeman v. United States*, 131 S. Ct. 2685, 2694 (2011); *In re Sealed Case*, 722 F.3d 361, 370 (D.C. Cir. 2013). The instant proceeding does not constitute a full resentencing of the defendant, U.S.S.G. § 1B1.10(a)(3), and the defendant's presence is not required because this is a proceeding regarding a sentence reduction pursuant to 18 U.S.C. § 3582(c), Fed. R. Crim. Pro. 43(b)(4). As such, the Court shall not require Galaviz to be present and shall enter its ruling based on the record before it, including the parties' memorandums in aid of sentencing. However, the Court must consider the factors set forth in § 3553(a) to determine whether a reduction is warranted in this particular instance. As discussed above, Galaviz was sentenced to a term of 180 months imprisonment and his revised range pursuant to the retroactive amendment to the guidelines is 168 to 210 months. Accordingly, the Court must determine whether it shall exercise its discretion to reduce Galaviz's sentence to a term of imprisonment of not less than 168 months.

Pursuant to § 3553(a), the Court must consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," "the kinds of sentence and the sentencing range established" by the guidelines, "any pertinent policy statement," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." At Galaviz's original sentencing hearing on February 6, 2014, the Court considered each of the factors set forth in 18 U.S.C. § 3553(a). The Court incorporates its findings made at the Galaviz's sentencing hearing but shall also reconsider the factors at this juncture and in light of the information provided by each party in its recently filed memorandum in aid of sentencing. Other than the information provided in the parties' memorandums in aid of

sentencing, the Court relies mainly on information available to it at the time of Galaviz's sentencing hearing.

Galaviz currently is 44 years old. Prior to his conviction in the instant action, Galaviz had no criminal history. He graduated from elementary school at age 14, and is skilled in welding, carpentry, plumbing, and electrical work. In terms of past employment, Galaviz was employed as a seasonal worker at Buurma Farms in Ohio from May to October and was a loading dock foreman. He also was previously employed by a roofing company and an onion company, and worked as a laborer on a bridge. Defense counsel also indicated that Galaviz owned a small bar in Texas.

At the time of sentencing in 2014, Galaviz owned one vehicle and his wife owned the residence in Texas where they lived. Galaviz had owned a number of vehicles over the years. He had no assets in his name or income, but did have the forfeiture amount (jointly and severally liable with co-defendants for a forfeiture money judgment of $726,000). As such, the Court found that Galaviz did not have the ability to pay a fine in addition to the forfeiture amount. There were no issues with Galaviz's physical, mental, or emotional health. He had engaged in some alcohol use until 2010. There was no recent use of drugs since 2009.

Galaviz was born in Mexico into an intact union and all of his family lives in the United States. His father is deceased and had owned Galaviz Electric in Mexico. At the time of sentencing, his mother resided in Texas and he had nine siblings, all either working or homemakers living in Texas and Ohio. Galaviz described a "perfect life" growing up with his parents and siblings. He came to the United States in 2000 to work, and is a legal resident of the United States as a permanent resident. He married his wife in 1990. His wife also is a permanent resident and, at the time of sentencing, was in the process of becoming a citizen. She is a high school graduate, homemaker, and agricultural worker. Galavis and his wife have a son and daughter who at the

6

time of sentencing were 22 and 19 respectively and were in college. Galaviz also had a daughter from another relationship who was 14 at the time of sentencing and who lived with her mother. During the summer from May to October, the family lived in Ohio and worked at Buurma Farms.

In terms of the offense conduct, Galaviz agreed as part of his plea agreement that he was a leader or organizer. However, at the time of sentencing, Galaviz objected to this designation. At sentencing, the Court found that Galaviz was a leader or organized based on the conduct that he agreed to in the factual proffer associated with his plea agreement over his objection. *See* Govt.'s Proffer of Proof in Supp. of Def.'s Plea of Guilty at 5-10, ECF No. [228].

Specifically, the Court found that Galaviz was a second supplier of drugs to one principal co-defendant, Daniel Zintura-Flores, based on the factual proffer. Galaviz arranged for three kilograms of a mixture and substance containing cocaine to be forwarded to New York. Zintura-Flores then obtained that shipment and brought it to the Washington, D.C. area to sell.

Galaviz remained in Texas but subsequently made arrangements for a large shipment of drugs to be transported from Texas to the Washington D.C. area in a tractor trailer. The delivery of the drugs was overseen by another co-defendant, Alejandro Chapa, who worked for Galaviz, and Galaviz made arrangements with Zintura-Flores by phone for the further transport of these drugs to a person working with Galaviz in New York City. Galaviz also assured Zintura-Flores that more cocaine would be arriving for distribution.

The tractor trailer arrived in Washington, D.C. on May 21, 2012, and was driven by co-defendant Reynaldo Charles who was employed by Galaviz. Chapa assisted in removing the packages from the tractor trailer and in making arrangements for the packages to be transported from Washington, D.C. to New York. Galaviz instructed Zintura-Flores to split the shipment into two parts because the Dodge Durango used to transport the drugs to New York would not hold all

the packages. Galaviz also told Zintura-Flores where to deliver the packages and told him to take Chapa with him because Chapa knew the people who were to receive the drugs. Zintura-Flores and Chapa made the first delivery of approximately nine kilograms of heroin to the persons in New York on May 22, 2012. Zintura-Flores expected to take the remaining 13 kilograms of heroin to New York on May 23, 2012, as instructed by Galaviz. However, on May 23, 2012, Zintura-Flores was arrested and agents recovered the 13 kilograms of heroin from the Dodge Durango.

The Court noted at Galaviz's sentencing hearing that Galaviz made the arrangements with Zintura-Flores to have the drugs transported to Zintura-Flores and then to New York; Galaviz provided the tractor trailer; Galaviz knew where to get the drugs in Texas and have the tractor trailer loaded; Galaviz's employee drove the tractor trailer to the Washington, D.C. area; and Galaviz had his employee Chapa oversee the actual transportation of the drugs from Texas to Washington, D.C., and from Washington, D.C. to New York. As such, the Court found that Galaviz's relevant conduct made him a leader or organizer for sentencing purposes with respect both to the cocaine and to the heroin. The Court also found Galaviz accountable for at least 22 kilograms of heroin with over 91 percent purity and three kilograms of cocaine powder.

As the Court indicated at the time of sentencing, Galaviz is convicted of very serious offenses that are related to large amounts of both powder cocaine and heroin, substances that are destructive to the community, families, and individuals. However, Galaviz had no prior convictions and accepted responsibility for his actions through entering into a plea agreement. The term of 180 months imprisonment represented the statutory minimums on each count (10 years on Count I and 5 years on Count II) and the Court imposed that term of imprisonment on each of the two counts to run concurrently. The Court considered the sentence parity as well as Galaviz's role in reaching its conclusion that the 180-month sentence reflected the seriousness of the offense, the

goal of deterrence, and was consistent with the policy that Congress set out in terms of mandatory minimums.

Presently, Galaviz requests that the Court reduce his sentence to a term of imprisonment of 168 months. In support of this request, Galaviz argues that the facts do not support the contention that Galaviz "was the mastermind and used complex methods to transport the drugs behind this conspiracy." Def.'s Mem. at 2. Indeed, Galaviz notes that upon his arrest, agents searched his home and vehicles and did not find any drugs or large amounts of cash or jewelry. *Id.* Moreover, Galaviz notes that he and his family worked to support themselves by travelling to Ohio to work on a produce farm for 11 years. *Id.* at 2-3. Galaviz emphasizes that he has no prior convictions and has not previously been arrested or indicted. *Id.* at 3. Although he is a permanent resident, Galaviz also notes that another potential consequence of his conviction is that he may be subject to deportation when he is released from incarceration. *Id.*

The Government opposes Galaviz's request for a sentence reduction, noting that he was one of two primary suppliers of heroin and cocaine to a large conspiracy. Govt.'s Mem. at 1. In support of this argument, the Government noted that Galaviz was shipping narcotics in large quantities and with exceptional purity through "complex methods which involved multiple persons" to both New York City and Washington, D.C. *Id.* at 2-3. Furthermore, the Government argues that Galaviz entered into and negotiated for a 15-year sentence as evidenced by his acceptance of the terms of his 11(c)(1)(C) plea. *Id.* at 3.

The Court notes that while § 1B1.10 permits courts to consider defendant's post-conviction conduct neither party has presented evidence related to Galaviz's conduct during his detention. As such, it appears to the Court that the considerations for each factor under § 3553(a) remain much the same at this time as at the original sentencing and continue to weigh in favor of imposing the

180-month sentence. Indeed, while the parties debate Galaviz's relative role in the conspiracy, the Court relies on its earlier finding that Galaviz was a leader or organizer based on the factual proffer to which he agreed. With respect to the parity of Galaviz's sentence, at this time the Court has not entered an order reducing the sentence of any of Galaviz's codefendants. Indeed, the only major difference between the information available to the Court now and at the original sentencing is the retroactive change to the applicable sentencing guidelines. At the original sentencing, the applicable guideline range for the term of imprisonment was 210 to 262 months. However, the Court applied a variance/departure and sentenced Galaviz to 180 months on each count to run concurrently, below the 210 to 262 month range under the guidelines. The applicable guideline range has now been lowered to 168 to 210 months, rendering Galaviz's current sentence within the revised range. Given Galaviz's prominent role in the conspiracy and upon consideration of the factors set forth in § 3553(a), the Court has determined that it shall not exercise its discretion to reduce Galaviz's sentence. Indeed, the parties and the Court agreed at the time of Galaviz's sentencing that the 180-month term of imprisonment was appropriate. Presently, the applicable guideline range has been lowered. However, Galaviz's sentence now falls within the revised range and, notably, is at the lower end of the revised range. There is no new information before the Court that persuades it that granting a reduction of Galaviz's sentence is warranted. Accordingly, in an exercise of its discretion, the Court shall deny Galaviz's Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) and shall not reduce Galaviz's original sentence of a 180-month term of imprisonment.

### III. CONCLUSION

For the foregoing reasons and in an exercise of its discretion, the Court shall not reduce Galaviz's original sentence of a 180-month term of imprisonment pursuant to 18 U.S.C. § 3582(c)

and Amendment 782 to the United States Sentencing Guidelines.  For the reasons described above and in its [331] Memorandum Opinion of September 15, 2015, which it INCORPORATES herein, the Court finds that it has the discretion to reduce Galaviz's sentence to a term of imprisonment of not less than 168 months.  However, for the reasons described above and based on the findings made at Galaviz's sentencing hearing on February 6, 2014, which the Court hereby INCORPORATES, the Court has determined that such a reduction is not warranted based on the information before it and in light of the sentencing factors set forth in 18 U.S.C. §3553(a).  Accordingly, the Court shall DENY Galaviz's [288] Motion for Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c).

An appropriate Order accompanies this Memorandum Opinion.

       /s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE