UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GUADALUPE GALAVIZ,<br><br>Defendant. | Criminal No. 12-cr-125-19 (CKK) |

MEMORANDUM OPINION
(November 24, 2023)

Defendant Guadalupe Galaviz ("Defendant" or "Mr. Galaviz") was charged by indictment with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 28 grams or more of cocaine base in violation of 21 U.S.C. § 846. Superseding Information, ECF No. 220. On November 6, 2013, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Mr. Galaviz pled guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or more of Heroin in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A)(i), and one count of Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or more of Cocaine Powder in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B)(ii). *See* Plea Agmt., ECF No. 229, at 1. Pursuant to the terms of Defendant's plea agreement, the parties agreed that a sentencing enhancement would apply for Defendant's role as an organizer or leader of criminal activity that involved five or more participants. *Id.* at 4. The parties agreed also that the appropriate sentence of imprisonment would be fifteen years followed by five years of supervised release. *Id.* at 2. Defendant received a concurrent sentence of 180 months imprisonment for both counts. Mr. Galaviz did not appeal his sentence and conviction,

1

and currently he is serving his term of imprisonment. The Government indicates the Defendant's "projected release date, according to BOP's [Bureau of Prison's] website, is April 28, 2025." Govt. Opp'n, ECF No. 401, at 7; *but see* Def.'s Reply, ECF No. 402, at 1 (noting a release date of April 28, 2024). Pending before this Court is Defendant's [394] *pro se* Motion for "Smith" Departure and Motion for FSA Eligibility to Earn First Step Act ("FSA") Credit, which is ripe for resolution.[1]

I. Background

During the November 16, 2013 plea hearing, the Court specifically asked if Defendant understood that "conviction of the offense c[ould] result in [Defendant] being deported, excluded from the United States or denied citizenship," and defense counsel indicated that he had "consulted an immigration law firm" and he believed that Defendant "would not be deported." 11/16/13 Plea Transcript, at 18-19. At the conclusion of the plea hearing, the Court accepted the plea agreement, and the case was set for sentencing on January 31, 2014.

Defendant's Presentence Investigation Report ("PSR") noted that Defendant's status as an alien precluded him from eligibility to participate in certain programs, *see* PSR, ECF No. 249, at ¶ 171, and further, that Mr. Galaviz may be amenable to removal proceedings as a result of his conviction. *Id.* at ¶ 103. Citing *Smith*, the Probation Office noted that "[t]he DC Circuit has ruled that a downward departure may be appropriate if the defendant's status as a deportable alien is

---

[1] In connection with this Memorandum Opinion, the Court considered: (1) Defendant's Motion for "Smith" Departure and Motion for FSA Eligibility to Earn First Step Act Credit ("Def.'s Mot."), ECF No. 394; (2) the Government's Opposition to Defendant's Motion ("Govt. Opp'n"), ECF No. 401; (3) Defendant's letter to the Bureau of Prisons regarding receipt of credit, ECF No. 400; (4) Defendant's Response to the Government's Opposition ("Def.'s Reply"), ECF No. 402; and (5) the record in this case. In an exercise of its discretion, the Court finds that holding oral argument on this matter would not be of assistance in rendering a decision. *See* LCrR 47(f).

likely to cause fortuitous increase in the severity of his confinement." *Id.* at ¶ 173. Despite this, Mr. Galaviz asked the Court to sentence him consistently with the plea agreement. *See* January 24, 2014 Defendant's Memorandum in Aid of Sentencing, ECF No. 253, at 2, 3, 7. Defendant stated that he was a Mexican citizen and a permanent resident, and he did not believe he would be deported and was not asking for a downward departure under *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). *Id.* at 3.

At the February 6, 2014 sentencing, defense counsel stated that he had "been back and forth with Mr. Galaviz on the issues of deportation for awhile," and Defendant did "not believe he [was] going to be deported" and because he did not want to be deprived of participating in programs at the facility, he was not asking for a reduction under *Smith.* 2/16/14 Transcript of Sentencing, ECF No. 394, at 32. The Court thereafter warned Defendant that he was "taking some risk with [his] legal status in the United States as a permanent resident," *id.* at 87-88, and further, that if he were deported, he would have to comply with the Bureau of Immigration and Customs Enforcement. *Id.* at 90. The Court sentenced Mr. Galaviz to a term of "One-Hundred Eighty (180) Months on Count One (1) and One-Hundred Eighty (180) Months on Count Two (2) of the Superseding Information," with his terms running concurrently and with credit for time served. *See* Judgment, ECF No. 268, at 3. The Court did not apply a *Smith* Departure.

On December 8, 2014, Mr. Galaviz filed a Motion for Modification or Reduction of Sentence – pursuant to 18 U.S.C. § 3582(c)(2) and based on Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G.") – which reduced the offense levels assigned to certain drug offenses. *See* Motion for Modification or Reduction of Sentence, ECF No. 288. The Court determined that while Mr. Galaviz was eligible for a reduction in sentence from 180 months to a term of not less than 168 months, pursuant to Amendment 782 of the Guidelines, it declined to

exercise its discretion to implement such reduction. *United States v. Galaviz*, 145 F. Supp. 3d 14, *15 (D.D.C. 2015), *order vacated and reentered,* 183 F. Supp. 3d 103, (D.D.C. 2016). In making its decision, the Court noted that "the parties and the Court agreed at the time of [Mr.] Galaviz's sentencing that the 180-month term of imprisonment was appropriate," and further, that "[Defendant's] sentence falls within the [Amendment 782] revised range and, notably, is at the lower end of the revised range." *Id.* at *20.

On May 23, 2016, Mr. Galaviz filed his [350] Notice of Appeal from the Court's Order denying his Motion for Modification or Reduction of Sentence. This Court's judgment was affirmed by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). *See United States v. Galaviz*, 892 F.3d 378 (D.C. Cir. 2018). On June 12, 2017, Mr. Galaviz filed his [365] Motion to Alter or Amend Judgment, which was denied by this Court. *See United States v. Galaviz*, 282 F. Supp. 3d 87, *91 (D.D.C. 2017). On August 29, 2022, Defendant filed his [391] letter – treated as a motion by this Court – indicating his intent to file a motion for reconsideration of his motion for modification or reduction of sentence as well as a new motion for reduction of sentence on different grounds. This Court denied Defendant's request to file a motion for reconsideration but permitted Defendant to file a motion on different grounds, *see* Memorandum Opinion and Order, ECF No. 392, and Defendant filed the instant Motion requesting a *Smith* departure and FSA eligibility.

II. Analysis

Defendant requests that this Court grant a *Smith* departure and reduce his sentence by up to six months, based on his claim that because of his status as a deportable alien, his sentence is more severe than it would be otherwise. Alternatively, Mr. Galaviz asks that the Court order the BOP to grant him home detention eligibility and time credits under the First Step Act, and to allow

participation in the Residential Drug Abuse Program ("RDAP"). Defendant's requests will be discussed in turn.

### A. *Smith* Departure

In *Smith*, the Court of Appeals for the District of Columbia Circuit reversed the underlying District Court determination and held that "a sentencing court may depart below the range indicated by the Guidelines where the defendant, solely because he is a deportable alien, faces the prospect of objectively more severe prison conditions than he would otherwise." *United States v. Smith*, 27 F.3d at 650. In that case, the defendant was a deportable alien who was prohibited from serving any portion of his sentence in a minimum-security prison. *Id.* at 651. Furthermore, he was likely ineligible for the benefits of 18 US.C. § 3624(c), whereby he would have the opportunity to spend the last 10% of his sentence in conditions that reasonably prepared him for community re-entry. *Id.* at 650-651. The D.C. Circuit remanded the case for resentencing but "expressed no opinion on whether a departure [was] appropriate" in that particular case. *Id.* at 656. The Circuit Court noted that it "did not mean to suggest that a departure is in order whenever a factor unrelated to a prison's just deserts may affect the severity of his confinement," but rather, the "severity must be substantial," and the sentencing court must be confident that it will "apply for a substantial portion of the defendant's sentence" and convinced that it is "undeserved." *Id.* at 655.

#### 1. Waiver

When the Government and a defendant agree that a specific sentence is appropriate, and the Court accepts the plea agreement, the Court is bound by that sentencing recommendation or request. Fed. R. Crim P. 11(c)(1)(C). The plea agreement operates as "a contract signed by the parties" and after the Court accepts it, the Court has "no power to modify the sentence under the Federal Rules of Criminal Procedure." *United States v. Oliver*, 589 F. Supp. 2d 39, 40 (D.D.C.

5

2008). In the instant case, in his plea agreement, "Defendant agreed to the exact sentence he received and uncategorically waived the right to bring the instant motion." Govt. Opp'n, ECF No. 401, at 8; *see* Plea Agreement, ECF No. 229, at 8 (whereby Defendant agreed to waive "any right to challenge the conviction or sentence or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack. . ."); *see also United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009) (enforcing a waiver provision in a plea agreement). During the plea allocution, Mr. Galaviz verbally indicated that he understood he was waiving these rights, and further understood the Court's warning that, as a result of his conviction, Defendant could be deported or excluded from the United States or denied citizenship.

The Government asserts that, in this case, Defendant "also waived his claim by twice informing the Court – once in his Memorandum in Aid of Sentencing and once at the sentencing proceedings – that he did not want the Court to grant a *Smith* departure." Govt. Opp'n, ECF No. 401, at 9. Defendant now asserts that a waiver of his right to seek a *Smith* departure through a collateral attack was not made knowingly, intelligently, and voluntarily; *see* Def.'s Mot., ECF No. 394, at 8. While Mr. Galaviz acknowledges that, at sentencing, he specifically chose not to request a *Smith* departure, he claims that he had "[no[]] knowledge he w[ould] [be] deprived of participating in [or] benefitting [from] programs at the B.O.P. facility." Def.'s Mot., ECF No. 394, at 10. The Government indicates however, and this Court agrees, that the record "belies [D]efendant's claim." Govt. Opp'n, ECF No. 401, at 9. As previously noted herein, the PSR specifically stated that Defendant's alien status precluded him from eligibility for participation in certain programs. Moreover, the Court finds that Defendant proffers no reason why this Court should not deny his request for a *Smith* departure on the basis of waiver where the language of the plea agreement "squarely foreclose[d]" Defendant's claim that his sentence is flawed because no *Smith* departure

6

was applied.  *United States v. Iesajaco-Diaz*, No. 21-3050, 2022 WL 17587857, at *1 (D.C. Cir. Dec. 13, 2022) (holding that similar plea agreement language waiving the right to appeal the sentence, including the term of imprisonment and the manner of determination of the sentence, barred the defendant's claims.)  The Government cites *United States v. Satizabal*, a case factually on point, where the defendant entered a guilty plea to a drug conspiracy charge and then, post-sentencing, filed a *pro se* motion asking for a *Smith* departure.  *Satizabal*, 190 F. Supp. 3d 183, 184 (D.D.C. 2016).  As in this case, the defendant there "was aware at the time of sentencing that his status as a deportable alien could affect his sentence," and he had "expressly waived the opportunity to ask the Court for a reduction on that ground."  *Id.* at 185.  The court found that "[h]aving agreed not to seek this reduction, [the defendant] can hardly now demand it."  *Id.*  Similarly here, where Mr. Galaviz specifically elected not to request a *Smith* departure and he waived his right to raise this type of collateral attack, he cannot now demand such a departure.

    2. Circumstances under which a Court may Modify a Sentence

Even assuming *arguendo* that Defendant has not waived his right to request a *Smith* departure, the Government notes correctly that there are limited circumstances under which courts can reduce or modify a defendant's sentence pursuant to 18 U.S.C. §3582(c), and none of those circumstances have been demonstrated in this case.  Gov't Opp'n, ECF No. 401, at 10-11 (citing cases noting that there are three exceptions in Section 3582(c) to the general rule that a sentence may not be modified).  The first exception – found in Section 3582(c)(1)(A) – relates to compassionate release based upon a showing of "extraordinary and compelling reasons."  But this exception is inapplicable to Defendant who has not "established that he has exhausted all administrative rights to appeal BOP's failure to bring a motion on [his] behalf or that he made such

a request of the warden of his facility more than 30 days ago."  Govt. Opp'n, ECF No. 401, at 11.[2]

Mr. Galaviz proffers that his sentence is unduly severe because his status as a deportable alien makes him ineligible for benefits under 18 U.S.C. §3624(c)(1) and the First Step Act, including the ability to earn First Step Act credits toward a reduction of his sentence, Def.'s Mot., ECF No. 394, at 7-8, but the Court was aware of this at sentencing.  Furthermore, in *Smith*, the court stated that, based on BOP regulations, deportable aliens are nearly always ineligible for these benefits.  *Smith*, 27 F.3d at 650-651.  The Court notes that these benefits under Section 3624(c)(1) are not mandated but rather are provided if practicable.  Imposition of a *Smith* departure is a discretionary decision, where such decision not to grant a departure is unreviewable except for reasonableness.  *United States v. Olivares*, 473 F. 3d 1224, 1230-31 (D.C. Cir. 2006)  Accordingly, Defendant's treatment herein is not a "rare circumstance," Def's Mot., ECF No. 394, at 7, but rather, it is consistent with BOP regulations, and any application of the compassionate release exception is unwarranted.   "Being categorically excluded from receiving early release is not, by itself, an unusual or atypical factor" nor is it an "exceptional increase in the severity of the conditions of confinement" that a defendant was "ineligible for half-way house assignment for the last six months because the BOP considers deportable aliens security risks[.]"  *United States v. Lopez-Salas*, 266 F.3d 842, 848, 850-851 (8th Cir. 2001).[3]  Because Defendant cannot show

---

[2] The Government asserts that even if Mr. Galaviz had made such a request of BOP, he has not argued that the reduction is consistent with Sentencing Commission policy statements and Section 3553(a)factors or that extraordinary and compelling reasons warrant such a reduction. Govt. Opp'n, ECF No. 401, at 11.

[3] *Compare United States v. Ferreria*, 239 F. Supp. 2d 849 (E.D. Wisc. 2002) (where a downward departure was granted based on defendant's status as a deportable alien and his unusual circumstances of having played a minor role in the drug conspiracy, having lawfully resided and being gainfully employed in the United States for 25 years, and the prospect of separation from his family upon deportation).

extraordinary or compelling reasons, the exception for compassionate release found in 18 U.S.C. § 3582(c)(1)(A) is inapplicable here.

The second exception, found in § 3582(c)(1)(B), permits the Court to modify a defendant's term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35." The third exception, found in § 3582(c)(2), permits a defendant's sentence to be modified in situations where the sentencing range was subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o). Neither of these exceptions are applicable here, nor has Defendant claimed that they are. Accordingly, Defendant's motion for a *Smith* departure fails. *See United States v. Awoleye*, Criminal Action 16-177 (RC), 2018 WL 10397033, at *2 (D.D.C. 2018) (denying request for *Smith* departure because none of the three exceptions described in 18 U.S.C. § 3582(c) applied).

### B. First Step Act Eligibility

In his Motion (but not in his Reply), Defendant raises complaints about the BOP's determinations regarding his participation in certain programming and his eligibility for time credits. *See generally* Def.'s Mot., ECF No. 394, at 14-15. As noted previously, Defendant proffers also that his status as a deportable alien makes him ineligible for benefits under the First Step Act, including the ability to earn First Step Act credits toward a reduction of his sentence, Def.'s Mot., ECF No. 394, at 7-8. As a preliminary matter, the Government notes that Defendant is "ineligible for First Step Act benefits on a basis completely independent of his deportablility," *i.e.*, his ineligibility stems from Mr. Galaviz serving a sentence for a conviction under "[s]ubparagraph (A)(i) . . . of section 401(b)(1) of the Controlled Substances Act" where he was found to be an "organizer, leader manager or supervisor of others in the [drug conspiracy] offense." Govt. Opp'n, ECF No. 401 at 13-14 (citations omitted). Additionally, the Government notes that because Defendant is challenging the execution of his sentence, he needs to "raise these challenges

9

pursuant to 28 U.S.C. § 2241." Govt. Opp'n, ECF No. 401, at 15 (citing cases indicating that an inmate challenging the BOP's decisions regarding participation in RDAP or credit for time served must do so via a habeas petition). "[T]he sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus." *Edwards v. Balisok*, 520 U.S. 641, 643-644 (1997).

Furthermore, a defendant must bring such action in the district of his confinement, not the district where he was sentenced. *United States v. Stewart*, 675 F. Supp. 2d 86, 88 (D.D.C. 2009). In this case, Mr. Galaviz is incarcerated in Florida and any challenge by him regarding the BOP's execution of his sentence should be brought in the United States District Court for the Middle District of Florida. Accordingly, this Court may either transfer the case or dismiss Defendant's claim without prejudice. In this case, the Court dismisses without prejudice Defendant's challenges (regarding execution of his sentence) because Defendant's Reply seems to indicate that he is not pursuing any claim except for a *Smith* reduction. *See* Def.'s Reply, ECF No. 401, at 3 ("Defendant did not challenge[ ] pursuant to 28 U.S.C. §2241 for prison condition[s] but only requested [ ] 6 month sentenced reduction under "Smith" Departure[.]")

III. Conclusion

For the reasons set forth herein, Defendant's request for a Smith Departure is DENIED and his request for FSA Eligibility to Earn First Step Act Credit is DENIED WITHOUT PREJUDICE. A separate order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE